UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| TIMOTHY DARRELL DAVIS, #291299, | ) | Civil Action No.: 4:11-cv-3263-MGL-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| MICHAEL McCALL, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## I.    INTRODUCTION

Petitioner, Timothy Darrell Davis, (Petitioner/Davis) is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing pro se, filed his Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 1, 2011.  He then filed an Amended Petition (Document # 45) on April 5, 2012.  Respondent filed a Motion for Summary Judgment (Document # 55) on April 30, 2012, along with a Return and supporting Memorandum.[1] The undersigned issued an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to file a response.  Petitioner filed a Response (Document # 68) in opposition to the Motion for Summary Judgment on July 2, 2012.[2]

This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC.

---

[1]Respondent also filed a Motion for Summary Judgment (Document # 41) prior to the filing of the Amended Petition.  That Motion is **MOOT**.

[2]After requesting and the court granting an extension of time to file a Response, Petitioner failed to meet the extended deadline and the undersigned entered a Report and Recommendation (Document # 66), recommending that the Petition be dismissed for Petitioner's failure to prosecute. Thereafter, Petitioner filed his Response and the district judge entered Orders (Documents 76, 80) declining to accept the recommendation of dismissal for failure to prosecute and remanding the matter back to the undersigned for a Report and Recommendation on the merits.

Because this is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

## II.     PROCEDURAL HISTORY

Petitioner, Timothy Darrell Davis, #291299 (Davis) is presently confined in the Perry Correctional Institution, of the South Carolina Department of Corrections (SCDC), as the result of his Greenville County conviction and sentence. The Greenville County Grand Jury indicted Davis at the April 2002 term of court for murder. (2002-GS-23-2623). App.448-49. C. Timothy Sullivan, Esquire, represented him on these charges.

On March 4-5, 2005, he received a jury trial before the Honorable C. Victor Pyle. The jury found him guilty of murder and Judge Pyle sentenced him to life imprisonment. App. 1-346. Davis timely served and filed a notice of appeal. Assistant Appellate Defender Robert M. Dudek represented him on appeal. On September 10, 2004, Davis filed his Final Brief of Appellant, in which he presented the following issue for review:

> Whether the judge erred in refusing to clarify his instructions on voluntary manslaughter where he instructed the jury that adultery can only constitute a sufficient legal provocation if the paramour and spouse are found engaged in sexual intercourse or some close embrace, since this charge was confusing given the facts of this case because it did not clearly convey to the jury that the general law of manslaughter - that the decedent-paramour striking or attacking the spouse was still a sufficient legal provocation - applied despite the absence of the adulterous spouse at the time [] the confrontation occurred?

Final Brief of Appellant at p. 3. The State filed a Final Brief of Respondent on September 9, 2004. Senior Assistant Attorney General William Edgar Salter, III, represented the State on appeal.

On March 4, 2005, the South Carolina Court of Appeals affirmed Davis' conviction and sentence in an unpublished Opinion. State v. Davis, 2005-UP-152 (S.C. Ct. App., Mar. 4, 2005). Davis' May 20, 2005 Petition for rehearing was denied on June 22, 2005.

Davis filed a Petition for Writ of Certiorari in the South Carolina Supreme Court on

September 21, 2005. Again, he attacked the manslaughter instruction. Respondent made a Return to Petition for Writ of Certiorari to the Court of Appeals on October 17, 2005. The South Carolina Court filed an Order denying certiorari on November 1, 2006. The South Carolina Court of Appeals sent the Remittitur to the Greenville County Clerk of Court on November 2, 2006.

Davis then filed a pro se Post-Conviction Relief (PCR) Application (07-CP-23-6216) on September 21, 2007. He alleged the following grounds for relief in his Application:

1.    Ineffective assistance of trial counsel:
      a.    "[R]efused and has failed in thorough investigations, not preparing for trial, not challenging false allegations and failing to make objections during trial."
      b.    "[R]efused and failed to interview and subpoena witnesses, records, and by not demanding complete discovery material."
      c.    "[I]ll advising client on myriad of legal matters pre-trial and during trial."
      d.    "[R]efused and failed to develop and present effective defense strategies."
2.    Prosecutorial and law enforcement misconduct:
      a.    Assistant solicitor Steinberg, Lt. Hamby, and Sgt. Guthrie "conspired to commit and did commit perjury."
      b.    Assistant solicitor Steinberg "violated comports of Brady v. Maryland in that certain discovery materials have been withheld."
3.    Ineffective assistance of appellate counsel:
      a.    "[C]ounsel refused and has failed at communicating with Petitioner, providing documents from reasonable requests and overlooking mandates of statutory law."
4.    U.S. and S.C. Constitutional rights violations:
      a.    Violation of First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.

App. 348-58. The State filed its Return on December 14, 2007. App. 359-64.

The Honorable Edward W. Miller held an evidentiary hearing into the matter on December 11, 2008, at the Greenville County Courthouse. Davis was present at the hearing and Elizabeth P. Wiygul, Esquire, initially represented him. Assistant Attorney General Karen Ratigan represented the State.

However, Davis made a motion to relieve his appointed counsel at the outset of the hearing.

-3-

The State advised the PCR judge that Davis had made a similar motion before the Honorable Carmen T. Mullen on September 24, 2008. At that time, Judge Mullen advised Davis that the case would proceed at the next PCR term, and that he would either utilize Ms. Wiygul as counsel or proceed pro se. As a result, Judge Miller relieved Ms. Wiygul and Davis proceeded pro se.[3] App. 367-73.  Davis testified on his own behalf, and he presented the testimony of trial counsel, Mr. Sullivan, as well as the prosecutor, Howard Steinberg, Esquire. App. 365-421; 423-24.

On January 27, 2009, Judge Miller filed an Order of Dismissal, in which he denied relief and dismissed the Application with prejudice. The Order of Dismissal addressed Davis' claims that trial counsel was ineffective because counsel (1) failed to adequately confer with Davis; (2) failed to adequately investigate and prepare Davis' case for trial; (3) failed to subpoena several witnesses; (4) should have requested a preliminary hearing; (5) failed to investigate whether Davis' separation from his wife would have prevented him from seeing his children; (6) failed to allow Davis to testify; (7) failed to object during the State's closing argument; (8) failed to object to the jury charge on voluntary manslaughter; and (9) failed to object to the jury charge on self-defense. App. 423-32.

On February 19, 2009, Davis filed a Motion to Alter or Amend Judgment, pro se. App. 433-44. The State filed a Return to his motion on March 10, 2009. App. 445-46. Judge Miller denied Davis' motion in an Order filed on March 11, 2009. App. 447.

Davis timely served and filed a notice of appeal. Appellate Defender Robert M. Pachak represented him in collateral appellate proceedings. On December 7, 2009, Mr. Pachak filed a Johnson Petition for Writ of Certiorari[4] on Davis' behalf and petitioned to be relieved as counsel.

---

[3]Pursuant to Judge Miller's instruction, Ms. Wiygul stayed at the hearing as stand-by counsel.

[4]See Johnson v. State, 2 3 94 S.C. 310, 364 S.E.2d 201 (1988). Johnson sets forth the procedures for counsel to follow when filing meritless appeals in state PCR cases pursuant to Anders v. California, 386 U.S. 738 (1967). Contra Pennsylvania v. Finley, 481 U.S. 551 (1987)

The only Question Presented in the Johnson Petition was stated as follows:

Whether defense counsel was ineffective in his representation of petitioner?

Johnson Petition for Writ of Certiorari at p. 2.

Davis subsequently filed his pro se "Petition for Writ of Certiorari," in which he raised nineteen claims under seven separate headings:

**ISSUE I** - Denied Meaningful PCR Process

Argument A - relief of counsel;

Argument B - compelled appointment, pro se;

Argument C - denied continuance.

## INEFFECTIVE ASSISTANCE OF COUNSEL

**ISSUE II** - Failed to Investigate, Advocate & Strategize

Argument A - investigations and research;

Argument B - advocacy;

Argument C - use of strategy.

**ISSUE III** - Failed to Make Objections

Argument A - coaching jurors;

Argument B - misrepresentation;

Argument C - prejudicial, irrelevant evidence.

**ISSUE IV** - Failed to Invoke Civil Rights

Argument A - legal standing in marriage;

Argument B - parent's rights regarding children;

────────────────

(prisoner, who had no equal protection or due process right to appointed counsel in post-conviction proceedings, also had no right to insist on Anders procedures for withdrawal of appointed counsel when collateral counsel determined direct appeal was frivolous).

Argument C - a father's duty.

**ISSUE V** - Failure Regarding Jury Instructions

Argument A - unsupported jury charge;

Argument B - conflicting, unconstitutional charges;

Argument C - request for additional charges.

**ISSUE VI** - Prosecutorial Misconduct

Argument A - vouching for/attacking credibility;

Argument B - presenting false/misleading evidence;

Argument C - introducing "facts" not in evidence.

**ISSUE VII** - Cumulative Error.

The South Carolina Supreme Court filed an Order denying certiorari and granting counsel's petition to be relieved on October 20, 2011. It sent the Remittitur to the Greenville County Clerk of Court on November 8, 2011.

Meanwhile, Davis had filed a second (successive) PCR Application (10-CP-23-8436) October 13, 2010, in which he raised the following allegation:

1.    "Substantial change in law and rights regarding conflicting jury instructions in violation of State and Federal Constitutions."

The State made its Return and Motion to Dismiss on February 16, 2011, arguing that the 2010, Application should be summarily dismissed because the Davis' Application was untimely under the statute governing the filing of state PCR applications, S.C. Code Ann.§ 17-27-45(A) (Supp. 2010), and because it was successive to the previous (2007) application. See Land v. State, 274 S.C. 243, 246, 262 S.E.2d 735, 737 (1980).

Pursuant to the State's request, and after reviewing the pleadings in this matter and all of the

records attached thereto, the Honorable Robin B. Stilwell issued a Conditional Order of Dismissal signed February 22, 2011, and filed February 28, 2011. The Conditional Order of Dismissal provisionally denied and dismissed the 2010 action, but it gave Davis twenty days from the date of service thereof, within which to show why the dismissal should not become final.[5]

Davis thereafter submitted his Reply And Objection To Return And Proposed Order of Dismissal, dated March 14, 2011. He asserted that he was raising a claim based on the South Carolina Supreme Court's decision in State v. Belcher, 385 S.C. 597, 612-13, 685 S.E.2d 802, 810 (2009), which was decided after the hearing and Order denying relief in his original PCR proceedings.

Judge Stilwell, however, dismissed the Application in a Final Order of Dismissal filed on April 29, 2011.[6] She found that "the publication of the Belcher opinion does not qualify as newly-discovered evidence. The South Carolina Supreme Court did not hold Belcher was retroactive. Rather, the Supreme Court found Belcher applied only to 'for all cases which are pending on direct review or not yet final where the issue is preserved.'" Davis filed a Motion to Alter or Amend Judgment on May 19, 2011. The State made its Return to his motion on May 24, 2011, and the Honorable D. Garrison Hill denied the Motion on May 25, 2011.

Davis thereafter served and filed a notice of appeal. The Honorable Daniel E. Shearouse, Clerk of the South Carolina Supreme Court, wrote Davis on June 17, 2011 and directed him to provide an explanation as required by Rule 243(c), SCACR. ("'[i]f the lower court has determined that the post-conviction relief action is barred as successive or being untimely under the statute of limitations, the petitioner must, at the time the notice of appeal is filed, provide an explanation as

---

[5]The Affidavit of Service for this Conditional Order is dated March 10, 2011.

[6]Davis had moved to strike this Order

to why this determination was improper. This explanation must contain sufficient facts, argument and citation to legal authority to show that there is an arguable basis for asserting that the determination by the lower court was improper. If the petitioner fails to make a sufficient showing, the notice of appeal may be dismissed"). Davis made his response, which is dated June 28, 2011.

However, the South Carolina Supreme Court filed an Order of Dismissal, dismissing the appeal, on July 20, 2011. It found that Davis' explanation was insufficient under Rule 243(c), SCACR. It sent the Remittitur to the Greenville County Clerk of Court on August 4, 2011. Therefore, the Court lacked jurisdiction to consider his Petition for Rehearing, en banc, the Certficate of Service for which is dated August 1, 2011, but was received by Respondent on August 8, 2011.[7]

On September 4, 2011, Davis filed a third PCR Application (11-CP-23-06133), in which he raised the following claims:

1.    Newly discovered evidence pursuant to SC Code § 17-27-45(C);

2.    Fraud upon the Court and sham Legal Process; and

3.    Prosecutorial Misconduct.

The essence of these allegations is that there allegedly was not a term of General Sessions Court on the date that his indictment reflects it was true billed. He also filed a Motion to Set Aside Judgment on November 17, 2011. The State made its Return and Motion to Dismiss on March 12, 2012, requesting that the PCR Application be summarily dismissed because it was untimely under the

---

[7]Once the remittitur is issued from an appellate court, the circuit court acquires jurisdiction to enforce the judgment and take any action consistent with the appellate court's ruling. Mickle v. Blackmon, 255 S.C. 136, 177 S.E.2d 548 (1970); Durst v. Southern Ry. Co., 161 S.C. 498, 159 S.E. 844 (1931); Thomas v. Lynch, 87 S.C. 444, 68 S.E. 817 (1910); Carpenter v. Lewis, 65 S.C. 400, 43 S.E. 881 (1903); Ex parte Dunovant, 16 S. C. 299 (1881); Martin v. Paradise Cove Marina, Inc., 348 S.C. 379, 559 S.E.2d 348 (Ct.App. 2001). After the remittitur is sent down from appellate court, the trial court acquires jurisdiction to enforce judgment and take any action consistent with appellate court ruling, and the decision of appellate court is final as to all questions decided. Ackerman v. McMillan, 477 S.E.2d 267 (Ct. App. 1996).

statute of limitations governing PCR Applications, S.C. Code Ann. § 17-27-45(A) (Supp. 2012), and because it violated the presumption against successive PCR applications. See S.C. Code Ann. § 17-27-90 (1985); Aice v. State, 305 S.C. 448, 409 S.E.2d 392 (1991). The PCR court entered a Conditional Order of Dismissal on March 30, 2012, dismissing the Application as outside the statute of limitations and as successive, but giving Davis twenty days to show why the dismissal should not become final. The PCR court entered a Final Order of Dismissal on June 25, 2012:

> [A]fter reviewing the pleadings in this matter and all of the records attached thereto, this Court issued a Conditional Order of Dismissal signed March 14, 2012 and filed March 30, 2012, provisionally denying and dismissing this action, while giving the Applicant twenty (20) days from the date of service of said Order in which to show why the dismissal should not become final. Attached to this Final Order and incorporated herein by reference is an Affidavit of Service dated April 18, 201 2, serving the above-mentioned Conditional Order of Dismissal on the Applicant.
>
> In a document captioned "Reply and Objection to Respondent's Return and Motion to Dismiss" and filed April 9, 2012, the Applicant argues he is entitled to a default judgment. The Applicant argues this is not a successive PCR application. The Applicant argues his understanding of the "secret nature of ex parte, grand jury procedures" is new evidence. The Applicant argues he has suffered a violation of equal protection and due process because the Grand Jury was not convened at the appropriate time to return the indictment in his case.
>
> This Court has reviewed the Applicant's response to the Conditional Order of Dismissal in its entirety, in conjunction with the original pleadings, and finds a sufficient reason has not been shown why the Conditional Order of Dismissal should not become final.

Final Order of Dismissal pp. 2-3.

Davis timely served and filed a notice of appeal. The South Carolina Supreme Court filed an Order dismissing the appeal on September 14, 2012. It found that Davis' explanation was insufficient under Rule 243(c), SCACR. Davis filed a Petition for Rehearing, but the Court denied Davis' Petition for Rehearing on October 18, 2012. It also sent the Remittitur to the Greenville County Clerk of Court on October 18, 2012.

III.    **GROUNDS FOR RELIEF**

Davis raises the following allegations in his Amended[8] Petition for Writ of Habeas Corpus:

**GROUND ONE**: Trial court denied petitioner due process and equal protection of law, and right to bear arms.
>    **SUPPORTING FACTS**: trial court erred by: (1) giving confusing jury instructions unsupported by evidentiary facts; (2) refusing/failing to give curative/clarifying instructions; (3) failing to declare the law; (4) giving unconstitutional/conflicting jury instructions regarding inferred malice verses self-defense as related to self-incrimination and right to bear arms.

**GROUND TWO**: Petitioner denied assistance of counsel in violation of U.S. Constitution.
>    **SUPPORTING FACTS**: Trial counsel's performance fell below an objective standard of reasonableness causing prejudice, which effected the outcome of petitioner's criminal proceedings by: (1) failing to fully investigate, advocate, and use reasonable strategy; (2) failed to make objections; (3) failed to invoke civil rights as related to self-defense; (4) failed in regard to jury instructions; (5) failed by allowing prosecutorial misconduct; and (6) causing cumulative error which deprived petitioner a fair trial whose outcome was unreliable.

**GROUND THREE**: Prosecuting agent rendered Petitioner's trial fundamentally unfair in violation of his rights to due process of law.
>    **SUPPORTING FACTS**: Solicitor committed misconduct by (1) vouching for/bolstering testimony of various witnesses; (2) eliciting and presenting false and misleading testimony and evidence; (3) failing to correct false, misleading testimonial evidence; (4) interjecting into closing arguments, his personal opinions as fact, without evidentiary support; (5) denigrating petitioner's defensive claims as false/dishonest.

**GROUND FOUR**: Petitioner denied due process and equal protection of law regarding second post-conviction relief proceedings.
>    **SUPPORTING FACTS**: Pursuant to specific statutory provision, petitioner

---

[8]Petitioner's original Petition included six grounds for relief. Prior to Respondent filing a Return in this case, Petitioner filed a Motion to Amend his Petition (Document # 16) to withdraw what was then ground five, in which he asserted that "Petitioner denied due process and equal protection of law regarding incident process," until it was exhausted in state court. The court granted the Motion to Amend as no responsive pleading to the original Petition had been filed. Petitioner thereafter filed his Amended Petition, which contains five grounds for relief. Currently pending before the court is Petitioner's second Motion to Amend his Petition (Document # 79), in which he seeks to now add the withdrawn ground as it has since been exhausted. Petitioner's second Motion to Amend his Petition is discussed below.

was allowed to file subsequent PCR application regarding constitutionally binding change in precedent which established new rule of law and right previously unavailable at trial. However, the PCR and S.C. Supreme Court(s) denied petitioner hearing and review on the merits of his claim based upon erroneous conclusions of fact and law, alleging that a statutory time limit had expired and that PCR was successive, neither of which are true.

**GROUND FIVE**[9]: Petitioner denied due process of law during first post-conviction relief proceeding.

    **SUPPORTING FACTS**: Petitioner was denied fair and meaningful PCR proceeding where ineffective counsel was relieved upon motion, and Petitioner was unwillingly compelled to proceed, pro se, without reappointment of counsel, without witnesses, and denied continuance.

## IV.  STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

Thus, a writ may be granted if a state court "identifies the correct principle from [the Supreme] Court's decisions but unreasonably applies that principle of law" to the facts of the case. Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir.2005) (citing Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). However, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of

---

    [9]This ground was Ground Six in the original Petition.  Respondent still refers to it as Ground Six in its Return and Memorandum.

federal law is not, in all instances, objectively unreasonable." Id. "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir.2004). Further, factual findings "made by a State court shall be presumed to be correct," and a Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## V.     PROCEDURAL BAR

### A.     Exhaustion and Procedural Bypass

The doctrines of exhaustion and procedural bypass can bar a federal habeas claim if a petitioner has not first submitted his claims for relief to the state courts. Generally, pursuant to the exhaustion doctrine[10], a habeas petitioner will be procedurally barred from bringing a federal habeas claim if the claim has not first been presented to the state's highest court with authority to decide the issue. See 28 U.S.C. § 2254[11]; Rose v. Lundy, 455 U.S. 509, 515, 102 S.Ct. 1198, 71 L.Ed.2d 379

---

[10]As stated by the Supreme Court:
The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241,251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act.

Rose v. Lundy, 455 U.S. 509, 515, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

[11]Section 2254(b) and (c) reads as follows:
(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
        (A) the applicant has exhausted the remedies available in the courts of the State; or
        (B) (i) there is either an absence of available State corrective process; or
           (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
    (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available     in the courts of the State.
        (3) A State shall not be deemed to have waived the exhaustion requirement or

(1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCAR 207; Blakeley v. Rabon, 266 S.C. 68, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR). See S.C.Code Ann. § 17–27–10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See S.C.Code Ann. § 17–27–90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.

When the petition for habeas relief is filed in the federal court, a Petitioner may present only those issues which were presented to the South Carolina Supreme Court[12] through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must present the issue to the state court before requesting a writ of habeas corpus in the federal courts. See Rose, 455 U.S. at 515; Richardson v. Turner, 716 F.2d 1059 (4th Cir.1983); Patterson v. Leeke, 556 F.2d 1168 (4th Cir.1977).

If a petitioner fails to raise a claim at the appropriate time in state court and state procedural rules bar further means of presenting the issue to the state courts, the claim is procedurally bypassed

be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

[12]The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review in the South Carolina Supreme Court after the petition's transfer to the South Carolina Court of Appeals. See State v. McKennedy, 348 S.C. 270, 559 S.E.2d 850, 854 (S.C.2002), citing In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases, 321 S.C. 563, 471 S.E.2d 454 (S.C.1990).

and, generally, is procedurally barred from federal habeas review. Smith v. Murray, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

Federal courts have jurisdiction to consider habeas claims subject to procedural bar (through exhaustion or procedural bypass); however,

> ... the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, 477 U.S. 533 (quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977)); see also Engle v. Isaac, 456 U.S. 107, 135, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

### B.     Cause and Actual Prejudice

To have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred.  Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). A Petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2678, 91 L.Ed.2d 397 (1986); Clozza v. Murray, 913 F.2d 1092 (4th Cir.1990), cert. denied, 499 U.S. 913, 111 S.Ct. 1123, 113 L.Ed.2d 231 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir.1988), cert. denied, 485 U.S. 1000, 108 S.Ct. 1459, 99 L.Ed.2d 690 (1988). Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054, 121 S.Ct. 661, 148 L.Ed.2d 563 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir.1997). Petitioner may rely on the doctrine of actual innocence to excuse default. "Actual innocence" is not an

independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir.1996), aff'd, 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir.1999). A petitioner may establish actual innocence as to his guilt, id., or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir.1997). Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. 152, 165–66 (1996). It is petitioner's burden to raise cause and prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir.1995), cert. denied, 517 U.S. 1171, 116 S.Ct. 1575, 134 L.Ed.2d 673 (1996).

## VI.    MOTION TO AMEND PETITION

As noted above, prior to Respondent filing a Return in this case, Petitioner filed a Motion to Amend his Petition (Document # 16) to withdraw what was then ground five, in which he asserted that "Petitioner denied due process and equal protection of law regarding incident process," until it was exhausted in state court.  The court granted the Motion to Amend as no responsive pleading to the original Petition had been filed.  Petitioner thereafter filed his Amended Petition, which contains five grounds for relief.  Currently pending before the court is Petitioner's second Motion to Amend his Petition (Document # 79), in which he seeks to now add the withdrawn ground as it has since been exhausted.  In his Motion to Amend, Petitioner seeks to add the following ground for relief:

> **GROUND SIX**:  Petitioner denied due process and equal protection of law regarding state indictment process.
>> **SUPPORTING FACTS**: In effect, Petitioner was tried without a legally valid indictment of which was further void as a nullity because ex parte grand jury proceedings, by which True Bill occurred, were illegal, therefore, making indictment unlawful through fraud, perjury and sham legal process, indicating prosecutorial misconduct which violates Petitioner's rights of due process and equal protection of law.

-15-

Proposed Amendment to Petition (attached to Petitioner's Motion to Amend).

Respondent opposes Petitioner's Motion to Amend, arguing that allowing the amendment would be futile. Rule 15(a)(2), Fed.R.Civ.P., provides that leave to amend a pleading should be given freely when justice so requires. "The law is well-settled 'that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.' " Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir.1999) (citing Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), Johnson v. Oroweat Foods Co., 785 F.2d 503, 509-10 (4th Cir.1986)). For a motion to amend to be denied for futility, the amendment must be "clearly insufficient or frivolous on its face." Johnson, 785 F.2d at 510-511; see also Rambus, Inc. v. Infineon Technologies, AG, 304 F.Supp.2d 812, 819 (E.D.Va.2004); Robinson v. GEO Licensing Co., L.L.C., 173 F.Supp.2d 419, 423 (D.Md.2001).

Respondent argues that adding this Ground to Plaintiff's Petition would be futile because it is procedurally barred where the state court relied upon independent and adequate state procedural bars in summarily dismissing the 2011 PCR application. As set forth above, Petitioner raised this issue in his third PCR application, which the PCR court dismissed as successive under S.C. Code Ann. § 17-27-90 (providing that all grounds for relief available to an applicant must be raised in his original, supplemental, or amended application) and because it was untimely under the one-year statute of limitations governing PCR actions, S.C. Code Ann. § 17-27-45. When a petitioner has deprived the state court of an opportunity to address his federal claims because he has failed to meet the state's procedural requirements for presenting his claim, an "independent and adequate state law ground" bars federal habeas review. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir.2008) (citing McCarver v. Lee, 221 F.3d 583, 588 (4th Cir.2000)). Therefore, if the court allowed Petitioner to amend his Petition to add this Ground, summary judgment would be appropriate because it is procedurally barred and Petitioner has failed to demonstrate cause and prejudice. As such, allowing the amendment would

be futile.  Accordingly, it is recommended that Petitioner's Motion to Amend be denied.

## VII.     ANALYSIS

### A.     Ground One

In Ground One, Petitioner asserts that the "trial court denied [him] due process and equal protection of law, and right to bear arms."  Specifically, he argues that the trial court erred by (1) giving confusing jury instructions unsupported by evidentiary facts, (2) refusing/failing to give curative/clarifying instructions; (3) failing to declare the law; (4) giving unconstitutional/conflicting jury instructions regarding inferred malice verses self-defense as related to self-incrimination and right to bear arms.  Respondent asserts that this ground is procedurally barred because Petitioner failed to raise it on direct appeal.  Petitioner argues that he did raise this issues (1) through (3) of this ground on direct appeal and that cause exists for his failure to raise issue (4) because his appellate counsel was ineffective for raising it.

As set forth above, a prisoner in state custody "generally must exhaust state court remedies, and a federal habeas court may not review unexhausted claims that would be treated as procedurally barred by state courts—absent cause and prejudice or a fundamental miscarriage of justice." Longworth v. Ozmint, 377 F.3d 437, 447–48 (4th Cir.2004) (internal citation omitted); 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State; or ... there is an absence of available State corrective process.").  "The exhaustion doctrine bars a claim if it is raised for the first time in a federal habeas petition." Mickens v. Taylor, 240 F.3d 348, 356 (4th Cir.2001) (en banc); see also Breard v. Pruett, 134 F.3d 615, 619 (4th Cir.1998).

To exhaust his available state court remedies, a petitioner must "fairly present[ ] to the state

-17-

court both the operative facts and the controlling legal principles associated with each claim."

Longworth, 377 F.3d at 448. "'The ground relied upon must be presented face-up and squarely; the

federal question must be plainly defined. Oblique references which hint that a theory may be lurking

in the woodwork will not turn the trick.'" Mallory v. Smith, 27 F.3d 991, 995 (4th Cir.1994)

(quoting Martens v. Shannon, 836 F.2d 715, 717 (1st Cir.1988)).

> On direct appeal, Petitioner raised the following issue:

> Whether the judge erred in refusing to clarify his instructions on voluntary
> manslaughter where he instructed the jury that adultery can only constitute a
> sufficient legal provocation if the paramour and spouse are found engaged in sexual
> intercourse or some close embrace, since this charge was confusing given the facts
> of this case because it did not clearly convey to the jury that the general law of
> manslaughter - that the decedent-paramour striking or attacking the spouse was still
> a sufficient legal provocation - applied despite the absence of the adulterous spouse
> at the time [] the confrontation occurred?

Final Brief of Appellant at p. 3. While Petitioner challenged the trial court's refusal to "clarify" a

"confusing" jury charge, he does not assert that the alleged error resulted in a violation of his due

process rights, equal protection rights, or his right to bear arms, which is what he asserts in Ground

One. To fairly present a claim, a petitioner must "include reference to a specific federal

constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief." Gray v.

Netherland, 518 U.S. 152, 162-63 (1996) (citing Picard v. Connor, 404 U.S. 270, 275 (1971). "A

habeas petitioner cannot simply apprise the state court of the facts underlying a claimed

constitutional violation; the petitioner must also explain how those alleged events establish a

violation of his constitutional rights." Mallory, 27 F.3d at 994 (citing Anderson v. Harless, 459 U.S.

4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982); Miranda v. Cooper, 967 F.2d 392, 397-98 (10th

Cir.1992); Wise v. Warden, Maryland Penitentiary, 839 F.2d 1030, 1033 (4th Cir.1988); Toney v.

Franzen, 687 F.2d 1016, 1021 (7th Cir.1982)). Therefore, this ground is procedurally barred from

federal habeas review unless Petitioner can show cause for the default and prejudice if the ground

-18-

is not addressed.

Petitioner does not assert cause or prejudice to overcome this default as to issues one through three of Ground One.  However, he argues as cause for his failure to raise issue four of Ground One that his appellate counsel was insufficient for failing to raise the issue on direct appeal.  In issue four of Ground One, Plaintiff argues that the trial judge committed "reversible error of a 'constitutional magnitude'" by "giving the unconstitutional 'inferred implication of malice from use of a deadly weapon' jury instruction."  Petitioner's Response to Motion for Summary Judgment (Document # 68) p. 4.

A claim of ineffective assistance of counsel asserted as cause for failing to exhaust claims generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."  Murray v. Carrier, 477 U.S. 478, 489 (1986). In his PCR Application, Petitioner asserted that appellate counsel was ineffective because he "refused and has failed at communicating with Petitioner, providing documents from reasonable requests and overlooking mandates of statutory law."  As noted above, to properly exhaust an issue, a petitioner must "fairly present[ ] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth, 377 F.3d at 448.  "'The ground relied upon must be presented face-up and squarely." Mallory, 27 F.3d at 995 (quoting Martens, 836 F.2d at 717).  The issue presented in his PCR Application does not allege that appellate counsel was ineffective for failing to raise an issue on appeal.  Furthermore, Petitioner fails to elaborate on his ineffective assistance of appellant counsel claim during the hearing, stating only that "my appellant defense was also lacking and I do not even have the appellant record and that is also in my plea.  That is all I have to say."  App. p. 418.

In addition, the PCR court did not address Petitioner's claim for ineffective assistance of

appellate counsel in its Order of Dismissal. In his Rule 59(e) Motion, Petitioner asked the PCR court for a ruling on several issues, including a claim for ineffective assistance of appellate counsel with respect to counsel's failure to bring to the court's attention errors of law resulting from the jury instruction on inferred malice. App. p. 440-41. The PCR court entered a form order on the Rule 59(e) Motion, stating "[b]ased upon careful consideration of all the evidence and upon full consideration of the Plaintiff's motion, this Court is not persuaded to alter or amend its ruling in this matter." App. p. 447. Thus, Plaintiff failed to properly present the issue to the PCR court, see Arnold v. State, 309 S.C. 157, 172, 420 S.E.2d 834, 842 (1992) ("The purpose of Rule 59(e), SCRCP, to alter or amend the judgment [,] is to request the trial judge to 'reconsider matters properly encompassed in a decision on the merits' . . . The petitioners, here, sought after full hearings and a decision on the merits to add new grounds and new claims for post-conviction relief. The trial judge was correct in denying their motions") and never received a ruling from the state court on this issue, see Marlar v. State, 375 S.C. 407, 653 S.E.2d 266, 267 (S.C.2007) (holding that issues must be raised to and ruled on by the PCR judge to be preserved for appellate review). As noted by Respondents, because Petitioner failed to raise this ineffective assistance of appellate counsel issue at PCR, it is procedurally defaulted and cannot be used to show cause for defaulting on another claim. See Edwards v. Carpenter, 529 U.S. 446, 453 (2000) (holding that a defendant's claim of ineffective assistance of counsel as cause for procedural default in a § 2254 petition is a constitutional claim that is also subject to being procedurally defaulted if it was not timely raised before the state court). Thus, Petitioner fails to show cause for failing to raise issue four, that is, that the trial court denied him his equal protection and due process rights and his right to bear arms by giving unconstitutional/conflicting jury instructions regarding inferred malice verses self-defense as related to self-incrimination and right to bear arms.

-20-

Nevertheless, assuming, <u>arguendo</u>, Plaintiff has establishd cause for his procedural default of this issue, he fails to establish actual prejudice. Petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. <u>Satcher v. Pruett</u>, 126 F.3d 561, 572 (4th Cir.1997). Here, upon Plaintiff's own admission, trial counsel did not object to the inferred implication of malice from use of a deadly weapon jury instruction. Thus, even if appellate counsel had raised the issue on direct appeal, it would not have been considered by the court of appeals because it was not preserved for review in the trial court. <u>Humbert v. State</u>, 345 S.C. 332, 548 S.E.2d 862 (2001). And, because it was not considered by the appellate court, it would be barred from federal habeas review. Thus, even if appellate counsel had been ineffective (an issue upon which the state court has not ruled), Petitioner has failed to show any actual disadvantage as a result. Accordingly, in addition to issues one through three of Ground One, issue four is also barred from review in this course. Therefore, it is recommended that summary judgment be granted as to Ground One of the Amended Petition.

**B.      Ground Two**

In Ground Two, Petitioner asserts that he was denied effective assistance of trial counsel for six reasons: "(1) failing to fully investigate, advocate, and use reasonable strategy; (2) failed to make objections; (3) failed to invoke civil rights as related to self-defense; (4) failed in regard to jury instructions; (5) failed by allowing prosecutorial misconduct; and (6) causing cumulative error which deprived petitioner a fair trial whose outcome was unreliable."

**1.      Issue One: "failing to fully investigate, advocate and use reasonable strategy"**

In its Order of Dismissal, the PCR court noted that, at the PCR hearing, Petitioner testified that he had limited meetings with trial counsel and that counsel was not prepared for trial. He further

claimed that counsel did not call witnesses on his behalf and that counsel told him that the witnesses were not called because the State had failed to prove malice. He also contended that the Assistant Solicitor had intimated that he had impeachable issues and that he was intimidated from testifying in his defense. Finally, counsel did not tell him there was "leeway" to negotiate sentencing.

The PCR court also set forth the testimony of trial counsel, Mr. Sullivan, in which he testified that he had several meetings with Davis and that they discussed the case in those meetings. Counsel provided a copy of the discovery materials to Davis, and they specifically discussed that Davis' confession, in which he admitted that he stabbed the victim, was very damaging to the defense. Counsel did not request a preliminary hearing because Davis had given a confession. Counsel did not request an independent evaluation, but Davis underwent a competency evaluation and neither not guilty by reason of insanity or guilty but mentally ill verdicts were at issue. Counsel stated he did not research whether the separation between Davis and his wife would have limited Davis' access to his children. There was an issue regarding the separation of Davis and his wife at trial, but counsel did not think this was a problem for their case.

Counsel stated he spoke to several people, who could have been potential witnesses, that worked with Davis at a local mission. Counsel stated he felt he had sufficient time to prepare for trial and he did not believe he could have done anything further to investigate the case. He also did not think it was necessary to request funding for an investigator. Counsel and Davis discussed a plea offer from the State, but Davis declined to accept it. Trial counsel stated he and Davis discussed whether to present a defense case and that he decided it was not in Davis' best interest to testify. App. 426-27; see also App. 380, 376-78, 381-82, 384-88, 391-95, 398, 402-05.

The PCR court rejected these claims as follows:

This Court finds the Applicant's testimony is not credible, while also finding trial counsel's testimony is credible. This Court further finds trial counsel adequately

-22-

conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in his representation.

This Court finds the Applicant failed to meet his burden of proving trial counsel did not adequately investigate and prepare his case for trial. Trial counsel filed discovery motions and reviewed those materials with the Applicant. Trial counsel discussed the State's evidence and the Applicant's version of events. This Court notes trial counsel testified he did not believe he could have done anything further to investigate the Applicant's case. This Court also notes trial counsel was hampered by the fact that the Applicant confessed to climbing into his estranged wife's apartment through an open window and stabbing the victim. (Trial transcript, pp.242-47).

This Court finds the Applicant failed to meet his burden of proving trial counsel was ineffective in failing to subpoena several witnesses. As these alleged witnesses did not testify at the evidentiary hearing, any discussion regarding what they would have testified about at trial is purely speculative. See Bannister v. State, 333 S.C. 298, 303, 509 S.E.2d 807, 809 (1998) (the South Carolina Supreme Court "has repeatedly held a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial.") (emphasis in original).

This Court finds the Applicant failed to meet his burden of proving trial counsel should have requested a preliminary hearing. Initially, this Court agrees with trial counsel's testimony that - since the Applicant had given a confession in this case - there was little to be gained in having a preliminary hearing. Regardless, this Court notes a defendant has no constitutional right to a preliminary hearing. State v. Keenan, 278 S.C. 361, 365, 296 S.E.2d 676, 678 (1982).

This Court finds the Applicant failed to meet his burden of proving trial counsel should have investigated whether the Applicant's separation from his wife would have prevented him from seeing his children. The Applicant confessed to climbing into an open window in his wife's apartment and stabbing the victim (his estranged wife's new boyfriend). (Trial transcript, pp.242-47). The Applicant has failed to produce any authority to support his suggestion that he was justified in these actions because he was attempting to see his children. This Court finds this issue to be wholly without merit.

This Court finds the Applicant failed to meet his burden of proving trial counsel should have allowed him to testify in his own defense. This Court finds the Applicant has failed to articulate how his decision not to testify at trial was coerced. Trial counsel stated at trial and testified at the evidentiary hearing that it was a strategic decision not to have the Applicant testify because his testimony would not have been helpful and his story had already been presented to the jury through the State's case. (Trial transcript, pp.280-81). See Roseboro v. State, 317 S.C. 292, 294, 454 S.E.2d 312, 313 (1995) (holding where trial counsel articulates a valid reason for employing

> a certain strategy, such conduct should not be deemed ineffective assistance of
> counsel). Further, the trial judge questioned the Applicant about his right to testify.
> (Trial transcript, pp.281-82). It is clear the Applicant's decision to testify was both
> informed and voluntary. See Brown v. State, 340 S.C. 590, 594, 533 S.E.2d 308, 310
> (2000) (holding a defendant's decision to testify or not must be made with knowledge
> of the consequences of either choice).

App. 427-29.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In the case of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. Id. at 687. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant. Id.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir.1985), reversed on other grounds, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The Court further found that

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of
> counsel's challenged conduct on the facts of the particular case, viewed as of the time
> of counsel's conduct ... the court must then determine whether, in light of all the
> circumstances, the identified acts or omissions were outside the wide range of
> professionally competent assistance.

Id. at 695.

As noted by the PCR court, courts are instructed not to second guess an attorney's trial strategy and tactics. Stamper v. Muncie, 844 F.2d 170 (4th Cir.1991); Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir.1977). Counsel cannot be judged ineffective for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." Darden v.Wainwright, 477 U.S. 168, 169, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Additionally, with respect to Petitioner's claim that trial counsel should have called witnesses, the PCR court found Petitioner could not show prejudice from the decision not to call witnesses because the court could only speculate as to what the witnesses would testify. The PCR court further found that Petitioner's decision not to testify was informed and voluntary. For these reasons, the PCR court's finding that Petitioner had failed to meet his burden of establishing that trial counsel was ineffective was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1), (2); Williams, 529 U.S. at 398. Therefore, this issue lacks merit.

### 2.     Issue Two: "failed to make objections"

In his Response to the Motion for Summary Judgment, Petitioner argues that trial counsel was ineffective for failing to object (1) when the Assistant Solicitor attempted to "coach or influence" jurors regarding reliability of the testimony from child witnesses, (2) to correct false testimony during cross-examination where the Assistant Solicitor alluded to non-existent custody/separation orders and (3) for failing to object to irrelevant, prejudicial, and speculative evidence and testimony. Response pp. 10-11. This "failure to object" issue was generally raised in

-25-

the PCR application and Petitioner questioned trial counsel about his failure to object to several different instances during the trial, see App. pp. 381-82, 383-84, 389-90, 393, 400.  However, there was no discussion during the hearing regarding a failure to object to the Assistant Solicitor's coaching or influencing the jurors or to a failure to object during cross-examination when the Assistant Solicitor alluded to custody/separation orders.  In its Order of Dismissal, the trial judge addressed Petitioner's allegations of trial counsel's failure to object during the state's closing argument and failure to object to certain jury instructions.[13]  App. pp. 429-430.  Thus, none of the issues raised here by Petitioner were addressed by the PCR court in its Order of Dismissal.

Respondent argues that even though the PCR court did not address the objections at issue here on habeas review, "Richter makes clear that a state court need not rely upon, nor need it even cite, Supreme Court precedent in order to avoid resolving a petitioner's claims in a way that is 'contrary to' or involves an 'unreasonable application of' clearly established federal law.  Rather, even state court orders summarily denying relief are entitled to AEDPA deference."  Amended Return and Memorandum (Document # 54) p. 57 n.29 (citing Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 784 (2011) ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated."); see also Richardson v. Branker, 668 F.3d 128, 144 n.19 (4th Cir. 2012) (holding that the lower court erred in conducting a de novo review of the petitioner's Brady claim where the lower court was unclear whether the state court ruled on both aspects of the Brady claim

_____

[13]The issues relating to failure to object to the jury instructions are discussed below with respect to issue number four under this Ground, "failed in regard to jury instructions."

or only one of the categories of evidence that the petitioner alleged was withheld, noting that "any doubts concerning the breadth of the [state] court's holding must be resolved in favor of the state"). However, <u>Richter</u> does not appear to be applicable here where the PCR court clearly addressed the merits of some of the issued raised at PCR, but not others.  Rather, it appears that Petitioner has failed to obtain a ruling from the state courts on the issues raised here.  Absent a ruling by the state court, there is nothing for this court to review.  Thus, it is recommended that Respondent be given twenty days from the date of the Order ruling on this Report and Recommendation to file a subsequent Motion for Summary Judgment addressing this issue.

### 3.     Issue Three: "failed to invoke civil rights as related to self-defense"

As set forth in Petitioner's Response to Respondent's Motion for Summary Judgment, this issue relates to Petitioner's claim that trial counsel should have "research[ed] and employ[ed] relevant civil laws regarding marital rights over children, and property (real and chattel personal) and how those laws would have been a useful factor as trial strategy regarding Petitioner's plea and right to act in self-defense."  Response p. 11.

In its Order of Dismissal, the PCR court noted that Petitioner testified that he had limited meetings with trial counsel and that trial counsel was not prepared for trial.  The PCR court noted that trial counsel testified that he had several meetings with Petitioner in which they discussed the case.  Trial counsel testified that he did not research whether the separation between Petitioner and his wife would have limited Petitioner's access to his children.  Trial counsel testified that he had sufficient time to prepare for trial and did not believe he could have done anything further to investigate the case.  The PCR court found that the Petitioner's testimony was not credible and trial counsel's testimony was credible.  The PCR court further found that trial counsel adequately conferred with Petitioner, conducted a proper investigation, and was thoroughly competent in his

representation in that he filed discovery motions and reviewed those materials with Petitioner and discussed the state's evidence and Petitioner's version of events . App. pp. 426-28.

With regard to Petitioner's marital status and the effect that had on his actions, the PCR Court concluded,

> This Court finds the Applicant failed to meet his burden of proving trial counsel should have investigated whether the Applicant's separation from his wife would have prevented him from seeing his children. The Applicant confessed to climbing into an open window in his wife's apartment and stabbing the victim (his estranged wife's new boyfriend). (Trial transcript, pp.242-47). The Applicant has failed to produce any authority to support his suggestion that he was justified in these actions because he was attempting to see his children. This Court finds this issue to be wholly without merit.

App. pp. 428-29.

Petitioner has failed to establish that the PCR court's finding that Petitioner had failed to meet his burden of establishing that trial counsel was ineffective was contrary to, or that it involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1), (2); Williams, 529 U.S. at 398.  Therefore, this issue lacks merit.

### 4.    Issue Four: "failed in regard to jury instructions"

In his Response to the Motion for Summary Judgment, Petitioner asserts that trial counsel was also ineffective for failing to properly object to the voluntary manslaughter charge and its inclusion of adultery as provocation, failing object to conflicting jury charges and for failing to request the appropriate self-defense charges.

### a.    Failing to properly object to the voluntary manslaughter charge and its inclusion of adultery as provocation

During the charge conference, the state requested that the trial court charge adultery as

-28-

provocation along with the voluntary manslaughter charge, and the trial judge granted the request

without objection from trial counsel.  App. pp. 282-83.  The trial judge charged the jury on voluntary

manslaughter as follows:

> Now, although it is not specifically set forth in the indictment I must charge you on what it takes to constitute the next grade of homicide. And that is called manslaughter. Now manslaughter is defined as the taking of . . . the life of a human being without malice, but in sudden heat of passion when the heat of passion is caused or brought about by a sufficient legal provocation. If a person flies into a sudden heat of passion upon a sufficient legal provocation and it results in the death of another, the law says that the act having been done under those circumstances, it would be manslaughter and not murder.

> To illustrate, if I were to go up to one of you and commit an unwarranted attack upon you say by striking you in the face and you acting under the heat of passion aroused by my act of hitting you were to kill me then you would not be guilty of murder but of manslaughter because you killed me in sudden heat of passion caused by my unwarranted attack.

> Now, Ladies and Gentlemen, I charge you that murder may be reduced to manslaughter if the act was committed in the heat of passion upon sufficient legal provocation. I just explained that to you.

> And I further charge you that adultery may in some instances serve as a sufficient legal provocation. However, spousal adultery is not a license to kill. The killing of a paramour may be reduced from murder to manslaughter . . . only where . . . the couple or paramour and the spouse are found engaged in sexual intercourse or some close embrace because this could constitute a sufficient legal provocation.

> Therefore, the stabbing of a paramour may be reduced from murder to manslaughter where a couple, a paramour and a spouse are found engaged in sexual intercourse or some other close contact because this could constitute a sufficient legal provocation. However, Ladies and Gentlemen, I charge you that where there has been a cooling off time sufficient for a person of ordinary reason and control to rid himself of the overpowering passion caused by the act . . . the law would say that that's murder and not manslaughter.

App. p. 333-34.  Following the jury instructions, the following colloquy occurred between

Petitioner's trial counsel and the trial judge:

> THE COURT: Anything further from the defendant?
> MR. SULLIVAN: Judge, I'm not sure if they were clear and they may have been, it may be me, on the lover in manslaughter, that he also can be a slapper.  Because he's a lover you don't have to catch him in the act to have manslaughter. He could still

come up and slap you without catching him and it could be manslaughter. It may
have been too – you've got the slapping person then you've got the lover person. The
lover person's got to be in the act. You see what I'm saying?
THE COURT: Well, I think I've adequately covered that in my charge.
MR. SULLIVAN: Okay. I just hope they understand —
THE COURT: You could have argued that. Maybe you did. I don't know.
MR. SULLIVAN: Well, —
THE COURT: All right. Anything else?
App. pp. 341-42.

On direct appeal, Petitioner claimed that the trial court's manslaughter charge was erroneous

because he charged that spousal adultery may reduce a homicide from murder to manslaughter only

where the paramour and spouse are found engaged in sexual intercourse or other close embrace.

Petitioner argued that this charge was irrelevant under the facts of this case and precluded a finding

of manslaughter based upon his struggle with the victim.  The state court of appeals rejected his

argument as follows:

Davis argues the trial court's instruction was confusing and did not fit the facts of the
case, because it failed to sufficiently define legal provocation as it relates to adultery.
Davis suggests the trial court should have explained more clearly that although a
person must find his spouse engaged in a close embrace for adultery to constitute
sufficient legal provocation, if the spouse's paramour attacks the person, that may
constitute sufficient legal provocation to reduce the murder to manslaughter. Read
as a whole, the charge did not constitute reversible error.

A trial court must determine the law to be charged based on the evidence at trial.
State v. Crosby, 355 S.C. 47, 51, 584 S.E.2d 110, 112 (2003). The trial court should
charge only the law applicable to the case, because the purpose of jury instructions
is to enlighten the jury. State v. Lee, 298 S.C. 362, 364, 380 S.E.2d 834, 836 (1989).
Jury instructions that do not fit the facts of the case may confuse the jury. Id. On
appeal, a jury charge must be reviewed in its entirety and if the charge as a whole is
free from error, isolated portions that may be misleading do not constitute reversible
error. State v. Smith, 315 S.C. 547, 554,446 S.E.2d 411, 415 (1994). "The substance
of the law must be charged to the jury, not particular verbiage." State v. Burkhart,
350 S.C. 252, 261, 565 S.E.2d 298, 303 (2002).

"Voluntary manslaughter is the unlawful killing of a human being in the sudden heat
of passion upon sufficient legal provocation." State v. Cooley, 342 S.C. 63, 67, 536
S.E.2d 666, 668 (2000). Spousal adultery may serve as sufficient legal provocation,
but is not a license to kill. State v. Gadsden, 314 S.C. 229, 233, 442 S.E.2d, 594, 597
(1994). For example, the case of a killer lying in wait or searching for the guilty

-30-

embrace is not one involving sufficient legal provocation. Id.

As part of its jury charge, the trial court enumerated the elements of voluntary manslaughter. It further defined sufficient legal provocation, providing examples of an unwarranted attack as well as provocation resulting from a person finding his spouse in a guilty embrace with a paramour. The trial court also explained why not all situations involving an adulterous spouse serve to reduce murder to manslaughter. Even if somewhat confusing, the trial court sufficiently explained the law of voluntary manslaughter. In fact, the evidence focused heavily on the relationship between Lorinda and Barnette, and Davis's near obsession with it, thereby raising the adulterous spouse issue to the trial court. The trial court instructed the jury on the law of voluntary manslaughter, including situations involving adultery but also including provocation from an unwarranted attack. The jury charge was based on the evidence presented and the relevant law. The charge was without reversible error.

State v. Davis, 2005-UP-152, *4-5 (S.C. Ct. App., Mar. 4, 2005).

Petitioner raised this issue at PCR as an ineffective assistance of counsel claim. The PCR court concluded that trial counsel was not ineffective for failing to object to the charge:

This Court finds the Applicant failed to meet his burden of proving trial counsel should have objected to the jury charge on voluntary manslaughter. This Court finds there was no error in the trial judge's voluntary manslaughter charge. (Trial transcript, pp.333-34). During the charge conference, the State specifically requested the trial judge charge "adultery as provocation" related to the manslaughter charge. (Trial transcript, p.283). This Court finds there was no error in trial counsel's failure to object either to the request or the charge itself because it was clearly supported by the evidence presented at trial. See State v. Dantonio, 376 S.C. 594, 608, 658 S.E.2d 337, 345 (Ct. App. 2008) (holding a trial court has a duty to give a requested instruction that is supported by the evidence and correctly states the law applicable to the issues.). This Court also notes that - on appeal - the South Carolina Court of Appeals specifically found no reversible error in the voluntary manslaughter charge. State v. Davis, Op. No. 2005-UP-152 (S.C. Ct. App. filed March 4, 2005).

App. 429-30.

Despite Petitioner's argument that trial counsel objected to the charge on the wrong basis, the objection was sufficient to preserve the issue of whether the charge was proper. The appellate court found no reversible error in the charge as given by the trial judge. Because there was no error in the charge, trial counsel was not ineffective for failing to raise the "correct" objection and Petitioner was not prejudiced by trial counsel's objection. For these reasons, the finding by the state

court that Petitioner failed to meet his burden of showing trial counsel was ineffective with respect to the jury charge for voluntary manslaughter was not was ineffective was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1), (2); <u>Williams</u>, 529 U.S. at 398. Therefore, this issue is without merit.

### b.      Failing to object to conflicting jury charges

Petitioner also asserts that trial counsel erred in failing to object to conflicting jury instructions. He asserts that the self-defense jury instruction conflicted with the implied malice jury instruction. Petitioner admits that he did not raise this issue at PCR until he filed his Rule 59(e) Motion. <u>See</u> Response p. 18. Thus, Plaintiff failed to properly present the issue to the PCR court, <u>see</u> <u>Arnold v. State</u>, 309 S.C. 157, 172, 420 S.E.2d 834, 842 (1992) ("The purpose of Rule 59(e), SCRCP, to alter or amend the judgment [,] is to request the trial judge to 'reconsider matters properly encompassed in a decision on the merits' . . . The petitioners, here, sought after full hearings and a decision on the merits to add new grounds and new claims for post-conviction relief. The trial judge was correct in denying their motions"), and never received a ruling from the state court on this issue because the PCR court declined to alter or amend its Order of Dismissal. Thus, this issue is procedurally defaulted and Plaintiff fails to assert cause for or prejudice resulting from the default. Accordingly, this issue is not properly before the court.

### c.      Failing to request the appropriate self-defense charges

Petitioner also argues that trial counsel was ineffective with respect to the type of self-defense charge he requested. He argues that trial counsel agreed to the basic <u>Davis</u>[14] self-defense charge, but

---

[14]<u>Davis v. State</u>, 317 S.E.2d 452 (1984).

ample evidence was presented at trial that would have supported additional, specific charges "such as right to act on appearances, social guest's duty to retreat, State's burden to disprove self-defense beyond reasonable doubt and jury's duty to render a verdict on lesser included when in doubt, a.k.a. the King[15] charge."  Response p. 18.  However, the only additional self-defense charges raised by Petitioner in the PCR court were the right to act on appearances, the right to act in defense of others, and the state having the burden to prove self-defense did not exist.  The following exchange occurred during the PCR hearing between Petitioner (acting pro se) and trial counsel:

> [Petitioner]:  There were other self-defense instructions you could have requested like the right to act on appearances and the State has the burden of proving beyond a shadow of a doubt self-defense did not exist.  Solicitor Steinberg did touch on it during his closing argument but it was never requested to the jury and I'd just like to ask why?
> [Trial Counsel]:  I asked Judge Pyle to give the self-defense instruction and that's the instruction he gave.
> Q:  The Davis instruction?
> A:  I don't know what you call it.
> Q:  Are you aware that there were other instructions available?
> A:  At that time, I thought his self-defense was sufficient.
> Q:  There is an abundance of case law.  You saw no strategic point in requesting or investigating whether or not there were other self-defense instructions available for your client's defense.  You did not investigate that?
> A:  No.

App. pp. 401-02.  Petitioner also testified as follows:

> Then the jury instructions concerning self-defense.  I wasn't aware of it because I'm not educated in the law, but there were other charges that Mr. Sullivan, I believe, should have and could have requested.  If I had known of them or about them, I would have requested them myself, personally.  I would have asked Mr. Sullivan to request them.
>
> One of those charges was the right to act on appearances.  Another one of those charges, which was based on the separation issues and the legal issues of separation, was the right to defend my property and my children.  Since there was no legal separation between me and my wife, there were no court orders, none, that was totally in dispute.  My wife was in a state of desertion and she had our children.

---

[15]State v. King, 155 S.E. 409 (1930).

App. pp. 414-415.

In its Order of Dismissal, the PCR court found with respect to the self-defense jury instruction:

> This Court finds the Applicant failed to meet his burden of proving trial counsel should have objected to the jury charge on self-defense. This Court also finds there was no error in the trial judge's self defense charge. (Trial transcript pp. 335-36). As there was no credible evidence presented at trial that the Applicant broke into his estranged wife's apartment and stabbed her new boyfriend in defense of his children, he would not have been entitled to self-defense charge that involved defense of third-parties. See State v. Dantonio, 376 S.C. at 608, 658 S.E.2d at 345.

App. p. 430.

The PCR court found that the evidence presented at trial did not support a self-defense charge for the defense of third parties and that finding is presumed to be correct. Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Plaintiff has failed to point to the evidence in the trial that would support such a charge. Furthermore, the PCR court specifically found that there was no error in the trial judge's self defense charge. Even though the remaining issues regarding the self-defense charge as raised by Petitioner here were not specifically addressed by the PCR court, the PCR court's ruling that there was no error in the self-defense charge and, thus, trial counsel was not ineffective with respect to that charge is still entitled to deference. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 784 (2011); see also Richardson v. Branker, 668 F.3d 128, 144 n.19 (4th Cir. 2012) (holding that the lower court erred in conducting a de novo review of the petitioner's Brady claim where the lower court was unclear

whether the state court ruled on both aspects of the <u>Brady</u> claim or only one of the categories of evidence that the petitioner alleged was withheld, noting that "any doubts concerning the breadth of the [state] court's holding must be resolved in favor of the state").

Jury instructions "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. <u>Estelle v. McGuire</u>, 502 U.S. 62, 72, 112 S.Ct. 475, 482 (1991) (citing <u>Cupp v. Naughten</u>, 414 U.S. 141, 147, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973)). Petitioner has failed to show that the jury instructions as presented violated some constitutional right. <u>Id.</u> Thus, he has failed to meet his burden of showing that the PCR court's decision that trial counsel did not err with respect to the self-defense charge was contrary to, or that it involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1), (2); <u>Williams</u>, 529 U.S. at 398.

5.     **Issues Five and Six: "failed by allowing prosecutorial misconduct" and "causing cumulative error which deprived petitioner a fair trial whose outcome was unreliable"**

Respondent argues that these issues are procedurally defaulted because Petitioner did not raise them in his PCR application and they could not be raised for the first time in his post-trial motion to alter or amend. <u>See</u>, <u>e.g.</u>, <u>Arnold v. State</u>, 309 S.C. 157, 172, 420 S.E.2d 834, 842 (1992) ("The purpose of Rule 59(e), SCRCP, to alter or amend the judgment [,] is to request the trial judge to 'reconsider matters properly encompassed in a decision on the merits' . . . The petitioners, here, sought after full hearings and a decision on the merits to add new grounds and new claims for post-conviction relief. The trial judge was correct in denying their motions"). Therefore, these issues are procedurally barred from federal habeas review and, because Petitioner has failed to assert cause

for the default or prejudice if the issues are not addressed, summary judgment is appropriate.

In sum, for the reasons discussed above, it is recommended that summary judgment be granted as to ground two.

### C.      Ground Three

In Ground Three, Petitioner asserts that the solicitor rendered his trial fundamentally unfair in violation of his rights to due process of law.  In support of this ground, Petitioner asserts that the solicitor committed misconduct by (1) vouching for/bolstering testimony of various witnesses; (2) eliciting and presenting false and misleading testimony and evidence; (3) failing to correct false, misleading testimonial evidence; (4) interjecting into closing arguments, his personal opinions as fact, without evidentiary support; (5) denigrating petitioner's defensive claims as false/dishonest. Respondent argues that each of these allegations is procedurally defaulted because Petitioner did not raise them in his PCR application and they could not be raised for the first time in his post-trial motion to alter or amend.  See, e.g., Arnold v. State, 309 S.C. 157, 172, 420 S.E.2d 834, 842 (1992) ("The purpose of Rule 59(e), SCRCP, to alter or amend the judgment [,] is to request the trial judge to 'reconsider matters properly encompassed in a decision on the merits' . . . The petitioners, here, sought after full hearings and a decision on the merits to add new grounds and new claims for post-conviction relief. The trial judge was correct in denying their motions").

Although Petitioner asserts "prosecutorial and law enforcement misconduct" in his PCR Application, App. p. 355, he alleges only that "Greenville County Assistant Solicitor, Howard Steinburg, in concert with Greer city police investigators, Lt. Hambry and Sgt. Guthrie conspired to commit and did commit perjury, violating laws of S.C. Code Ann., Title 16" and "Petitioner asserts that Assistant Solicitor H. Steinburg violated comports of Brady v. Maryland, in that certain discovery materials have been withheld."  App. p. 356.  These issues are different from the issues

-36-

raised in his habeas Petition.  In addition, although Petitioner attempted to raise some of the same issues raised here in his Rule 59(e) Motion, those issues were not properly before the PCR court. See, e.g., Arnold v. State, 309 S.C. 157, 172, 420 S.E.2d 834, 842 (1992) ("The purpose of Rule 59(e), SCRCP, to alter or amend the judgment [,] is to request the trial judge to 'reconsider matters properly encompassed in a decision on the merits' . . . The petitioners, here, sought after full hearings and a decision on the merits to add new grounds and new claims for post-conviction relief. The trial judge was correct in denying their motions").  Therefore, this ground is procedurally barred from federal habeas review and, because Petitioner has failed to assert cause for the default or prejudice if the ground is not addressed, summary judgment is appropriate as to ground three.

### D.     Ground Four

In Ground Four, Petitioner asserts that he was denied due process and equal protection of law regarding second post-conviction relief proceedings.  In support of this ground, Petitioner asserts:

> Pursuant to specific statutory provision, petitioner was allowed to file subsequent PCR application regarding constitutionally binding change in precedent which established new rule of law and right previously unavailable at trial. However, the PCR and S.C. Supreme Court(s) denied petitioner hearing and review on the merits of his claim based upon erroneous conclusions of fact and law, alleging that a statutory time limit had expired and that PCR was successive, neither of which are true.

Respondent argues that this allegations fails to state a claim upon which federal habeas relief may be granted, since alleged errors in state post-conviction procedures are not cognizable in a federal habeas corpus action.

Dismissal is appropriate as to this ground because it pertains to alleged errors in the PCR action.  Alleged errors in state PCR proceedings are not cognizable in a federal habeas action. Wright v. Angelone, 151 F.3d 151, 159 (4th Cir.1998); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir.1988) (holding that errors and irregularities in connection with state PCR proceedings are not

cognizable on federal habeas review). Accordingly, it is recommended that summary judgment be granted as to Ground Four.

       **E.**     **Ground Five**

In Ground Five, Petitioner asserts that he was denied due process of law during his first post-conviction relief proceeding because he was compelled to proceed pro se and denied a continuance. Again, because this ground regards alleged errors in his PCR proceedings, summary judgment is appropriate because such errors are not cognizable in a federal habeas action. Wright, 151 F.3d at 159; Bryant, 848 F.2d at 493.

## VIII.  CONCLUSION

Based on the foregoing, it is recommended that Petitioner's Motion to Amend Petition (Document # 79) be denied and that Respondent's Motion for Summary Judgment (Document # 55) be denied in part and granted in part. Specifically, it is recommended that summary judgment be denied as to Ground Two, Issue Two and that and that Respondent be given twenty days from the date of the Order ruling on this Report and Recommendation to address that issue in accordance with this Report and Recommendation. It is recommended that summary judgment be granted as to all other grounds.

                          s/Thomas E. Rogers, III
                          Thomas E. Rogers, III
                          United States Magistrate Judge

February 1, 2013
Florence, South Carolina

          **The parties are directed to the important notice on the following page.**